B-C REMEDY COMPANY v. UNEMPLOYMENT COMPENSATION COMMISSION OF NORTH CAROLINA.

(Filed 31 January, 1946.)

**1. Master and Servant § 59d—**

The provision of the North Carolina Unemployment Compensation Act for refund of money is sufficiently broad to cover refund of money paid through mistake without raising technical distinctions between voluntary

and involuntary payments, and defense to recovery on the ground that there is no remedy for recovery for taxes voluntarily paid is inapplicable. G. S., 96-10 (e).

**2. Same—**

Section 26, ch. 377, Session Laws of 1943, which enlarges the time within which the application and refund of unemployment compensation taxes may be made from one to three years, is procedural and relates merely to the limitation on the authority of the commission to make refund, and therefore giving the statute retroactive effect does not violate any constitutional inhibition, but even if it should be considered strictly as a statute of limitations, retroactive effect would not impair obligations of contracts or destroy vested rights, and therefore would be constitutional.

**3. Limitation of Actions § 3—**

Giving retroactive effect to statutes enlarging the period of limitation for the institution of an action or filing of claim does not violate any constitutional inhibition when such effect does not impair the obligations of contracts or disturb vested rights.

**4. Master and Servant § 59d—**

Section 26, ch. 377, Session Laws of 1943 (G. S., 96-10 [e]), *is held* to disclose the intent that its provisions be retroactive as well as prospective, and under the statute an employer may file claim for refund of taxes erroneously paid within three years of payment and the Commission may make refund, even though such refund was precluded under the terms of the prior statute because more than one year had elapsed from date of payment.

**5. Same—**

Under the facts of this case formal application for refund of taxes paid *held* waived, and further, the Commission had authority to make the refund on its own initiative.

APPEAL by defendant from *Jeff D. Johnson, Jr., Special Judge,* at April Term, 1945, of DURHAM.

This is a controversy without action to determine the right of the plaintiff to recover or the power of the defendant to refund an item of $661.16 erroneously paid as a contribution or tax with respect to employment for the year 1940.

The payment was made under the following circumstances:

The plaintiff is an employing corporation liable to contributions under the North Carolina Unemployment Compensation Act, and the defendant is the State agency authorized to collect and receive such contributions.

Effective 1 January, 1940, the Congress amended the National Social Security Act so as to exclude wages in excess of $3,000 paid to any

individual as "wages" within the Act. Because of the interrelation between the Federal and State taxes and administration, and the necessity of readjustment, the North Carolina General Assembly enacted chapter 320, Public Laws of 1941, excluding from the tax remuneration in excess of $3,000 paid to any individual for employment during the calendar year 1940. Subsequent to the effective date of these laws, the plaintiff paid to the defendant its tax for the period, erroneously including therein tax computed on salary paid to one of its employees in excess of $3,000. It is admitted in the agreed facts that "the law and regulations in effect at the time the payment was made did not require the payment of taxes on salaries in excess of $3,000, as set forth in 57(a)2 of said act."

On 18 December, 1942, plaintiff applied for a refund under section 14 (d) of the Unemployment Act. The refund was denied because application had not been made within one year from payment of the tax, that being the terms of the law as it then stood. Subsequently, by chapter 377, Session Laws of 1943, section 14 (d) was amended so as to enlarge the time during which application is required to be made, or refund made by the Commission on its own motion, to three years.

Upon these facts the defendant contended that it had no power to make the refund; that plaintiff's right to recovery had become barred by the expiration of one year from payment, under the one year statute, and could not constitutionally be revived by the amendment enlarging the time to three years; and that the amendment itself was not intended to be retrospective or retroactive, and should not be so construed. The defendant, however, expresses a willingness to refund the money if the statute can be construed otherwise, and stipulates that judgment should be entered for the plaintiff if it should be found that the Commission has power to make the refund.

The pertinent part of the amended statute reads:

"(d) If not later than three years from the last day of the period with respect to which a payment of any contributions or interest thereon was made, or one year from the date on which such payment was made, whichever shall be the later, an employer who has paid such contributions or interest thereon shall make application for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof because such adjustment cannot be made, and the commission shall determine that such contributions or interest or any portion thereof was erroneously collected, the commission shall allow such employer to make an adjustment thereof, without interest, in connection with subsequent contribution payments by him, or if such adjustment cannot be made, the commission shall refund said amount, without interest, from the fund. For like cause and within the same period,

adjustment or refund may be so made on the commission's own initiative: Provided, that nothing in this section or in any other section of this act shall be construed as permitting refund of moneys due and payable under the law and regulations in effect at the time such moneys were paid."

The parties consider, and so agree, that the sole question involved is whether the cited law is intended to be retrospective, and may be retroactively applied for plaintiff's relief.

The matter was submitted in a controversy without action on the above facts to Judge Jeff D. Johnson at a regular term of Durham Superior Court, and judgment was rendered in favor of the plaintiff for the amount demanded. Defendant appealed.

*Victor S. Bryant for plaintiff, appellee.*

*Chas. U. Harris, R. B. Overton, and R. B. Billings for defendant, appellant.*

SEAWELL, J. As a part of its defense, appellant suggests that there is no remedy for recovery of tax voluntarily paid. That could only be true where the statute fails to provide for a refund under such circumstances, and in a jurisdiction which would regard an action at law for its recovery as a suit against the State, without statutory authority for its institution. In view of the construction we give the statute, we do not find it necessary to discuss the point. The Act is broad enough in its phraseology to cover refund of money paid through mistake, without raising technical distinctions between voluntary and involuntary payments. There is no question that the item was erroneously collected or paid within the meaning of that term as used in the statute.

We come to the question whether the statute, as amended, may be retroactively applied in favor of appellee's claim. Against this appellant interposes the objection that the claim had been already barred by a statute of limitation, and the Legislature could not constitutionally restore the remedy; and that the statute is entirely prospective in legislative intent.

Statutes such as that under review are not usually regarded as strictly statutes of limitation upon actions, such as we have in G. S., Art. 5, sec. 1-46, *et seq.,* and which have given rise to many vexing questions regarding the effect of repeal, suspension, extension and revival of the remedy. The statute is procedural, and the limitation it imposes is addressed rather to the power of the Commission to make the refund and the conditions upon which it may be made than to any limitation upon an action for the recovery of the money. While the limitation on the authority of the Commission to make the refund is just as fatal

to the claim, so long as it lasts, as a statute of limitation addressed to an action itself, it can readily be understood that a change of the law enlarging the time in which the refund may be applied for or made does not involve any constitutional inhibitions such as apply to ordinary statutes of limitation, and the Legislature has the power to apply it retroactively, if it has that in mind. In fact, it is the statute itself which creates the right, and it has the same power to renew it. *Graham v. DuPont,* 262 U. S., 233, 67 L. Ed., 965; *Unemployment Compensation Commission of Kentucky v. Consolidation Coal Company,* 152 S. W. (2d), 971, 287 Ky., 330.

But apart from this suggestion, and considering the statute to be one of strict limitation on actions, there can be no doubt that the Legislature can waive statutes of limitation which have completely run in favor of the State. In the situation here presented—that of a taxpayer attempting to recover from the State money justly his, and the State attempting through its own laws to let him have it—it does not follow that any of the ordinary difficulties in the way of a revival of a remedy have any force or application. The Constitution is infringed only when such action impairs the obligation of a contract or destroys a vested right, and these inhibitions are invoked when it is sought to enforce the restored remedy *in invitum.* The relation between the State and a taxpayer is not one of contract; and certainly the State has acquired no vested interest in appellee's money which it cannot waive by appropriate legislation. Even a private debtor may waive the bar of the statute by his own conduct, and in so far as constitutional limitations are concerned, the State certainly has as much freedom in that respect as an individual.

The statute is not only broad enough to cover taxes "erroneously collected," but it is also broad enough in its terms to cover any sort of taxes erroneously paid during the three year period preceding its enactment, provided no statutory rule of construction stands in the way. Considering the relationship of the parties and the remedial nature of the statute, any deterring rule should be fortified by some consideration of public policy rather than merely based on the experience that most legislation is prospective.

No material change has been made by the amendment except the extension of time for making application for the refund or the power of the Commission to make it on its own initiative. The whole statute is intended to give relief to a class whose equities continually arise in natural course regardless of changes in the law which might occur at any time. Such a statute could not be expected to make a clean break with the past—repeal the old law—and make no readjustment whereby those still equitably entitled to relief, or entitled under previously existing law,

might be heard.  The fact that no express provision was made in the amendment for them strongly leads to the conclusion that it was intended they should have the benefit of the extended time.  Once this is conceded, the theory of exclusively prospective application breaks down and the statute operates retroactively; and it does not make any distinction or create any classes among those from which taxes have been erroneously collected prior to the enactment of the law when action is taken in time.

Since, as we have said, the language employed is broad enough to express the retrospective intent and to be retroactively applied, we think the statute falls under the rule expressed in *Byrd v. Johnson,* 220 N. C., 184, 185, 16 S. E. (2d), 843, in which, quoting from *Gillespie v. Allison,* 115 N. C., 542 (548), 20 S. E., 627, it is said:

" 'No vested right of property has been disturbed, and, in our view, this is a remedial statute enlarging rights instead of impairing them. *"Statutes are remedial and retrospective, in the absence of directions to the contrary,* when they create new remedies for existing rights, remove penalties or forfeitures, extenuate or mitigate offenses, supply evidence, make that evidence which was not so before, abolish imprisonment for debt, enlarge exemption laws, enlarge the rights of persons under disability, and the like, unless in doing this we violate some contract obligation or divest some vested right." *Larkins v. Saffarans,* 15 Fed. Rep., 147.  These principles as to vested rights and retrospective laws are carefully discussed in the great and leading case of *Calder v. Bull,* 3 Dallas, 386.  See, also, many cases collected in Myers on Vested Rights, ch. 1; *Hinton v. Hinton,* Phillips, 410; *Tabor v. Ward,* 83 N. C., 294.' *Martin v. Van Laningham,* 189 N. C., 656 (658); *Bateman v. Sterrett,* 201 N. C., 59 (61-62); *Woodmen of the World v. Comrs. of Lenoir,* 208 N. C., 433."  (Italics ours.)

The case at bar is in all respects similar to the factual situation in *Unemployment Compensation Commission v. Consolidation Coal Co., supra,* where it appears that the Kentucky Unemployment Compensation Law was amended in the same respect as ours and under the same necessity.  The opinion covers every phase of the subject, and the conclusion reached, it seems to us, is sound.

Also, in a factual situation comparable to the one under review, in *Graham v. DuPont, supra,* involving the effect of an amendment to the refunding statute, the Court held it to be retroactive and applicable to a claim for refund which might have been barred under the previous law, and denied injunctive relief because the claimant had, under this provision, an adequate remedy at law.

We are of opinion that the statute is retroactive in its effect and under the agreed facts makes it the imperative duty of the appellant to make the refund.

The appellant points out that even if the amended statute is available to the plaintiff, it has not made the application required by the statute. Under the stipulations before us, we regard the formal application as waived. The defendant Commission has admitted all the facts necessary to make it mandatory upon it to refund the tax. Moreover, under the law the Commission might make the refund on its own initiative upon finding the facts to be as it is agreed they actually are, and has expressed its willingness that judgment should be entered against it if it has power to make the refund. In this situation, the court was justified in entertaining the proceeding and rendering judgment.

We think the court below reached the correct conclusion and its judgment is

Affirmed.